# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | **FILED** |
| | ) | Jan 17, 2023 |
| | ) | CLERK, U.S. DISTRICT COURT |
| iPhone 12 with black case, S/N: DX3HLGE70DXP | ) | EASTERN DISTRICT OF CALIFORNIA |
| | ) | |
| | ) | |

Case No.    2:23-sw-0033 KJN

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____ Eastern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251(a) | Sexual exploitation of a child |
| 18 U.S.C. 2252(a)(2) | Distribution of Child Pornography |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☑ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/
_____
*Applicant's signature*

Christopher Gecewicz, FBI Special Agent
*Printed name and title*

Sworn to me and signed telephonically.

Date: _____ 01/17/23 _____

City and state: _____ Sacramento, California _____

_____
*Judge's signature*

Kendall J. Newman, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Christopher Gecewicz, a Special Agent (SA) with the Federal Bureau of Investigation (FBI), being duly sworn, depose and state as follows:

### I.      INTRODUCTION AND PURPOSE FOR THE WARRANT

1.      I submit this application and affidavit in support of a search warrant authorizing the search the phone found on the person of **WILLIAM JAMES FITZGERALD**, (the "FITZGERALD" or the "SUBJECT"), in furtherance of the crimes described in this affidavit. This affidavit is submitted in connection with an investigation into the production and distribution of material involving the sexual exploitation of minors.  Specifically, the FBI is investigating the use of a smart phone or other digital devices ("the Device(s)") by FITZGERALD, described in more detail in Attachment A hereto, to produce and possess child pornography and to coerce and entice a minor.  As set forth herein, probable cause exists to believe that FITZGERALD has violated 18 U.S.C. §§ 2251(a) – Sexual Exploitation of a Minor and 2252(a)(2) – Distribution of Child Pornography, and that evidence, contraband, fruits, and instrumentalities of a crime are likely to be found on the Device.

2.      The items to be searched for and seized, more specifically detailed in Attachment B hereto, include electronic data and information.

3.      This affidavit is based upon my own personal knowledge but also the knowledge of other law enforcement officers involved in this investigation.  Where I describe statements made by other people (including online covert employees), that statements are described in sum, substance, and relevant part.  Similarly, where I describe information contained in reports and

1

other documents or records in this affidavit, this information is also described in sum, substance, and relevant part.

4.      Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only those facts that I believe are necessary to establish probable cause to believe that evidence of violations of 18 U.S.C. §§ 2251(a) and 2252(a)(2).

## II.      AGENT BACKGROUND

5.      I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so employed since January 2021.  I was trained as an FBI Special Agent at the FBI Academy in Quantico, Virginia.  During my time training in Quantico, Virginia, I received specialized training in the methodology of general law enforcement.  I am currently assigned to a Violent Crimes Squad of the Sacramento Division of the FBI, specifically Violent Crimes Against Children.  In my current assignment, I am responsible for investigating and identifying child pornography and child exploitation crimes.  I have participated in federal investigations involving high technology or cybercrime, violent domestic crimes involving illegal gun and drug trafficking, and threatening interstate communications.  I have performed law enforcement related tasks such as executing state and federal search and arrest warrants, utilizing confidential sources, coordinating undercover operations, and surveillance of subjects.  I have executed search warrants that have involved the search and seizure of financial instruments, guns and drugs, computer equipment, and proceeds from a crime.

## III.      APPLICABLE CRIMINAL STATUTES

6.      This investigation concerns alleged violations of 18 U.S.C. § 2251(a) and

2

2252(a)(2) relating to material involving the sexual exploitation of minors, coercion and enticement of a minor, and distribution of child pornography.

      a.     18 U.S.C. § 2251(a) prohibits a person from employing, using, persuading, inducing, enticing, or coercing any individual who has not attained the age of 18 years, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct.  18 U.S.C. § 2251(e) punishes attempts to sexually exploit minors.

      b.     18 U.S.C. § 2252(a)(2) prohibits a person from receiving visual depictions of minors engaged in sexually explicit activity, including the lewd and lascivious display of their genitals, and attempts to do so.

## IV.    DEFINITIONS

7.    The following definitions apply to this Affidavit and Attachment B:

      a.     "Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily obscene or do not necessarily depict minors engaging in sexually explicit conduct.

      b.     "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical or other means, of sexually explicit conduct, where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

c.   "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, and mobile phones and devices. *See* 18 U.S.C. § 1030(e)(1).

d.   "Computer hardware," as used herein, consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data.  Computer hardware includes any data-processing devices (including central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, "thumb," "jump," or "flash" drives, which are small devices that are plugged into a port on the computer, and other memory storage devices); peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

e.   "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data.  Data security devices may consist of hardware, software, or other programming code.  A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices.  Data security hardware may include encryption devices, chips, and circuit boards.  Data security software may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched.

4

Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

f.   "Computer software" is digital information that can be interpreted by a computer and any of its related components to direct the way it works.  Computer software is stored in electronic, magnetic, or other digital form.  It commonly includes programs to run operating systems, applications, and utilities.

g.   "File Transfer Protocol" ("FTP") is a standard network protocol used to transfer computer files from one host to another over a computer network, such as the Internet.  FTP, built on client-server architecture, uses separate control and data connections between the client and the server.

h.   A "hash value" is a unique alpha-numeric identifier for a digital file.  A hash value is generated by a mathematical algorithm, based on the file's content.  A hash value is a file's "digital fingerprint" or "digital DNA."  Two files having identical content will have the same hash value, even if the file names are different.  On the other hand, any change to the data in a file, however slight, will change the file's hash value, even if the file name is unchanged.  Thus, if two files have the same hash value, they are said to be identical, even if they have different file names.

i.   "Internet Protocol address" or "IP address," as used herein, refers to a unique number used by a computer or other digital device to access the Internet.  Every computer or device accessing the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer or device may be directed properly from its source to its destination.  Most Internet Service Providers (ISPs) control a range of IP addresses.  IP addresses can be

"dynamic," meaning that the ISP assigns a different unique number to a computer or device every time it accesses the Internet.  IP addresses might also be "static," if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet.  ISPs typically maintain logs of the subscribers to whom IP addresses are assigned on particular dates and times.

j.   "Internet Service Providers" ("ISPs"), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment.

k.   The "Internet" is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

l.   "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

m.   "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

n.   "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal,

whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person.

o.   A "storage medium" is any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

p.   A "website" consists of textual pages of information and associated graphic images.  The textual information is stored in a specific format known as Hyper-Text Mark-up Language ("HTML") and is transmitted from web servers to various web clients via Hyper-Text Transport Protocol ("HTTP").

q.   "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

## V.   BACKGROUND ON COMPUTERS AND CHILD PORNOGRAPHY

8.   Based on my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, computers, computer technology, and the internet are critical components in the receipt, distribution, and collection of child pornography. Some or most smartphones can be as powerful, have similar functions, and have more memory as desktop or laptop computers, and as such the language can be shared between computers and smartphones.

9.   A child pornography image or video taken with a digital camera can be transferred directly to a device, and then transferred from that device to any other server or

computer connected to the internet via modem or wireless connection.  Many devices not traditionally thought of as computers, such as video game consoles, smartphones, and digital media players have the ability to store digital data, access the internet, and send or receive digital data electronically.

10.     Child pornography collectors may use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Yahoo! and Gmail.  The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats.  A user can set up an online storage account from any computer with access to the Internet.  Evidence of such online storage of child pornography is often found on the user's computer.  Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer in most cases.

11.     Communications made to or from a computer or other digital storage or communications device are often saved or stored on that device.  Storing this information can be intentional, for example, by saving an e-mail as a file on the computer, or by saving the location of one's favorite websites in "bookmarked" files.  Digital information can also be retained unintentionally.  Traces of the path of an electronic communication may be automatically stored in many places, such as temporary "cache" folders.  In addition to electronic communications, a computer user's Internet activities generally leave traces in a computer's web cache and Internet history files.  A forensic examiner often can recover evidence that shows what software a computer contains, when the computer was sharing files, and the contents of some of the files that were uploaded or downloaded.

12.     Files or remnants of such files can be recovered years after they were viewed, downloaded, or deleted.  Deleted files can often be recovered months or years later using readily available forensic tools.  This is because a deleted file does not actually disappear; rather, it remains on the computer's hard drive until it is overwritten by new data.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.  Files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or "cache."  The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages.  Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

## VI.     TOOLS OF THE INTERNET

13.     I know from my training and experience that individuals who receive, possess, distribute, and transport child pornography often use the Internet to increase the number of images in their collection.  The Internet provides users with access to websites and social networking sites from which images and videos of child pornography can be purchased, downloaded, and uploaded.  Social media, social networking sites, and other platforms allow individuals to entice or coerce minors.  In addition, the Internet allows communications with others who express an interest in child pornography and permits the transfer of data and images across state and foreign boundaries.  Individuals who use the Internet can communicate electronically by using e-mail.  E-mail messages can contain text, data, or graphic images.  This type of communication is private in that it is directed from one Internet user to another.  Internet

9

users can also communicate and trade images of child pornography using Instant Messaging. Instant Messaging is "real time" communication in that the persons communicating are engaging in online dialog.  This means of communication, like e-mail, is private in that it is one Internet user communicating specifically, and exclusively, with another.

14.     Digital evidence of the results of web browsing can often be found on the storage drive of a device during a forensic examination.  In addition, the dialog and image downloads created when corresponding via email and instant message are generally stored in the storage drive of a device until overwritten by other correspondence and are usually retrievable during a forensic examination of the device.  This is true, even if the device user has deleted the data.

## VII.    SEARCH AND SEIZURE OF COMPUTER SYSTEMS AND RELATED STORAGE MATERIALS IN GENERAL

15.     Based on my own experience and conversations with other agents, I know that information stored in an electronic format may be found not only on the storage drive of a device, but also on other device hardware, peripherals, and storage media. This is true for the following reasons:

a.   Volume of Evidence: Computers and smartphones can store the equivalent of thousands of pages of information.  When the user wants to conceal criminal evidence, he or she may store it in many places, in random order, and with deceptive file names.  This requires the review team to examine all the stored data to determine whether it is included in the warrant.  This sorting process can take several weeks to conduct, and it would be impractical to attempt this kind of data search on site.

b.   Technical Requirements:  Searching computer systems is a highly technical process that requires specific expertise and specialized equipment.  There are so many types of

hardware and software in use today that it is impossible to bring to the search site all of the necessary technical manuals and specialized equipment needed to conduct a thorough search. In addition, it may be necessary to consult with personnel who have specific expertise in the type of hardware, software application, or operating system that is being searched.

      c. In order to retrieve electronically stored evidence from a device, agents may be required to seize most or all of a device's equipment, including hardware, peripherals, software, documentation, security devices, and passwords. This is true because of the following:

           i. Certain operating systems and hardware can be configured to operate only with a precise set of hardware, software, and peripherals.

          ii. Peripheral devices that allow users to enter or retrieve data from the storage devices may vary in their compatibility with other hardware and software.

       iii. The review team may have to install software used by the SUBJECT on a government computer in order to retrieve the information the SUBJECT may have stored using that software. The review team may also need to refer to hardware and software documentation maintained by the SUBJECT to complete an analysis in a timely manner. The SUBJECT's device and documentation may also contain hand-written notes specific to the seized systems.

      d. The Nature of Data Storage: files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files downloaded to a storage drive can be stored for years at little or no cost. Even when such files have been deleted, they can be recovered months or years later using readily-available forensics tools. When a person "deletes" a file on a device, the data contained in the file does not actually disappear; rather, that data remains on the storage device

11

until it is overwritten by new data.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space—for long periods of time before they are overwritten.   In addition, an operating system may also keep a record of deleted data in a "swap" or "recovery" file.   Files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or "cache."  The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages.  Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.  The search for these files and file fragments can take considerable time, depending on the computer user's practices.   It often takes weeks or months to complete such a search, particularly if many hard drives and other storage media are seized from the location to be searched.  A thorough search for such relevant evidence would be impractical during an on-site preview.

16.     As further described in Attachment B, this warrant seeks permission to locate not only files that might serve as direct evidence of the crimes described on the warrant, but also for evidence that establishes how the device was used, the purpose of its use, and who used them. Additionally, the warrant seeks information about the possible location of other evidence, or about persons who may know things helpful to the investigation at issue.

17.     Further, as described above and in Attachment B, this application seeks permission to search and seize records that might be found on the Device(s), in whatever form they are found.  One form in which the records might be found is that they are stored on a phone's hard drive, or other electronic media.  Some of these electronic records might take the form of files, documents, and other data that is user-generated.  Some of these electronic

records, as explained below, might take a form that becomes meaningful only upon forensic analysis of the computer(s) or other electronic storage media seized.

18.     Although some of the records called for by this warrant might be found in the form of user-generated documents (such as word processor, picture, and movie files), storage drives can contain other forms of electronic evidence as well.  In particular, records of how a phone has been used, the purposes for which it was used, and who has used it are called for by this warrant.  As described above, data on the storage drive not currently associated with any file can provide evidence of a file that was once on the storage drive but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).  Virtual memory paging systems can leave traces of information on the storage drive that show what tasks and processes on the computer were recently in use.  Web browsers, e-mail programs, and chat programs store configuration information on the storage drive that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the attachment of peripherals (*e.g.*, cameras and printers for creating or producing images), the attachment of other external devices, and the times and dates the phone was in use.  Phone file systems can record information about the dates files were created and the sequence in which they were created.  This information can sometimes be evidence of a crime, or can point toward the existence of evidence in other locations.  Evidence of this type is a conclusion, based on a review of all available facts and the application of knowledge about how a phone behaves.  Therefore, contextual information necessary to understand the evidence described in Attachment B also falls within the scope of the warrant.

19.     In finding evidence of how a phone has been used, the purposes for which it was used, and who has used it, sometimes it is necessary to establish that a particular item is not present on a drive.  For example, I know from training and experience that it is possible that malicious software can be installed on a phone, often without the phone user's knowledge.  This

software can allow a phone to be used by others.  To investigate the crimes described in this warrant, it might be necessary to investigate whether any such malicious software is present on the phone, and, if so, whether the presence of that malicious software might explain the presence of other things found on the phone's hard/storage drive.

20.     Upon seizing the Device(s), law enforcement personnel trained in searching and seizing computer data will transport it to an appropriate law enforcement laboratory for review. Any searches of the Device(s) on or off site will be performed by a review team in accordance with and as defined by the review protocols described below in order to extract and seize any data that falls within the list of items to be seized as set forth in Attachment B.

21.     The government will execute a forensic search of the Device(s) within one hundred twenty (120) days from the date the Court signs this search warrant.  If upon forensic search of a device it is determined the device contains no evidence of illegal activity, the government will return the device to its owner within seven (7) days.  In the event the government requires more than one hundred twenty (120) days in order to access the contents of the Devices, it may seek an extension from the Court.

22.     No wire communications or electronic communications shall be intercepted during the execution of this search warrant other than those stored on the digital devices.  I have no information to indicate that the phone to be searched operate in any way as a server of an electronic bulletin board service, Internet web site host, Internet file transfer protocol server, Internet chat server, or Internet email forwarder or server.  As such, it would appear that the provisions of the Wire and Electronic Communications Interception Act, 18 U.S.C. Section 2510 et seq., do not apply.  Should information of this type be discovered, the Government will preserve it and set it aside.

### VIII.   SPECIFIC METHODS FOR SEARCH OF DIGITAL EVIDENCE

23.     Your affiant is seeking authority to search for, among other things, items containing digital data, more particularly described in Attachment B.  As many devices commonly found in a residence may contain digital data, your affiant will make every reasonable effort to minimize seizures to only those devices for which there is reason to believe might be found:  1) evidence or fruits of the aforementioned crimes; 2) contraband implicated by this affidavit; and 3) property/instrumentalities designed for use, intended for use, or used in the commission of the aforementioned crimes.  If an item which may reasonably contain evidence of child pornography cannot be eliminated from suspicion, your affiant intends to remove it to a laboratory setting for a more detailed forensic examination by the review team, in accordance with the parameters described below.

24.     As previously mentioned, the search of a device hard drive or other computer storage medium is a time-consuming manual process often requiring months of work.  Your affiant is aware that the seizure of a device hard drive, by necessity, provides the seizing agency with potential access to data outside the scope of this warrant.  A search protocol will be utilized to uncover evidence, instrumentalities and contraband set forth in Attachment B for which there is probable cause.  As part of the search protocol, your affiant intends to direct the review team to search any phone and phone storage medium for those items contained in Attachment B.  As it concerns this particular case, your affiant intends to direct the review team to search digital media with some or all of the following methods, not listed in any particular order; however, the listing of these methods is not a representation that these specific techniques will be employed in this case:

a.   Keyword Searches: Your affiant is aware that computer forensic utilities provide the capability for a user to search for specific key words which may exist on a piece of digital media.  Your affiant intends to use specific keywords known to be related to either the subject's illicit internet activities or child pornography.  As it concerns child pornography, examples of

15

such keywords include, but are not limited to "preteen," "hussyfan," and "r@ygold."  Those keyword searches will indicate files and other areas of the storage drive that need to be further reviewed to determine if those areas contain relevant data.  A list of keywords utilized will be maintained with the records of the forensic examination.

      b.  Data Carving: Your affiant is aware that, as previously mentioned, data residue may be left in the "free," "unallocated," or "slack" space of a phone hard drive, that is, the space not currently used by active files.  Your affiant is further aware that, as previously mentioned, many operating systems utilize temporary storage often referred to as "swap space" on the hard drive to store contents from main system memory.  Such unallocated and swap space may contain the residue of files which can be carved out, often in an automated or semi-automated fashion.  Your affiant intends to use forensic tools to carve out files, in particular, image files such as JPEG and GIF files.  The mere act of carving out such files does not expose your affiant to the contents of such recovered files, but makes those files available for further relevancy checks, such as keyword searches (explained above) and hash value comparisons (explained below).

      c.  Hash Value Comparisons: Your affiant is aware that computer forensic utilities provide the capability to utilize a function known as a hash algorithm.  A hash algorithm uses a mathematical formula to analyze the data composing a file, and to generate a unique "fingerprint" for that file.  The act of hashing a piece of data does not reveal to an investigator any information about the contents of that data.  However, your affiant is aware that computer forensic applications often contain databases of known hash values for files.  Some of those files are "ignorable," which enables other forensic processes to ignore files (such as the Windows operating system) that are not evidentiary in nature.  Some of the files are "alert" files, such as the Child Victim Identification Program (CVIP) hash set, that contains hash values for a small subset of the identified picture and video files for known victims of child

pornography.  CVIP alert files notify an examiner that a file appears to contain known depictions of child pornography.  Your affiant seeks permission to utilize automated hash value comparisons to both exclude irrelevant files, and to locate known child pornography files. Hash value comparisons are useful, but not definitive, as even a single-bit change to a file will alter the hash value for the file.  The forensic review team does not intend to rely solely on hash value comparisons, but intends to utilize them in order to assist with identifying relevant evidence.  The use of this search method is intended to narrow the search.  A search of known hash values, however, will not be used exclusively, because your affiant knows that when previously identified images of child pornography are found on a target's computer, typically there are many more images of child pornography depicting unknown child victims.  Using a hash value search method exclusively would not uncover these images of unknown child victims as well as other evidence authorized by this warrant and described in Attachment B.

d.   Opening Container Files, Encrypted Volumes, Embedded Files: Your affiant is aware that relevant data may be compressed, encrypted, or otherwise embedded in other files or volumes.  It is often not possible through any automated process to examine the contents of such containers without opening them, just as it is not possible to examine the contents of a locked safe without first opening the safe.  In the event that compressed, encrypted, or otherwise embedded files or volumes may exist on the seized items, your affiant intends to use sophisticated forensic tools to attempt to open any such container files which may reasonably contain evidence of child pornography.

e.   File Header/Extension Checks: Your affiant is aware that individuals involved in illegal activities on a computer often change the extension of a file (such as .jpg) to some other incompatible extension (such as .txt) in order to disguise files from casual observers.  The extension of a file, however, is not necessarily linked to the "header" of a file, which is a unique marking imbedded automatically in many types of files.  By comparing the extension of

17

a file with the "header information" of a file, it is possible to detect attempts to disguise evidence of illegal activities.  Such a comparison can be made in an automated process by computer forensic tools.  Your affiant intends to run an automated header comparison to detect such efforts, and intends to review any such files which reasonably may contain evidence of child pornography.

f.   Thumbnail/Image Views: Although hash value comparisons can positively identify known child pornography depictions, a negative hash value comparison does not exclude an image from suspicion.  There is no known alternative for visually inspecting each image file.  Your affiant therefore intends to examine at least a thumbnail image of each image file on the digital media whether "live," data carved, or identified by header.

g.   Registry/Log File Checks: Your affiant is aware that it is necessary in any criminal case to establish not only that a crime has occurred, but also to establish what person committed that crime.  Operating systems and computer programs often maintain various administrative files such as logs which contain information about user activities at certain times.  In the Windows operating system, for example, some of these files are collectively referred to as "the registry."  Such files contain specific information about users, often including email addresses used, passwords stored, and programs executed by a particular user. These files may also contain evidence regarding storage devices which have been connected to a computer at some time.  Multiple backup copies of such files may exist on a single computer. Your affiant intends to examine these files to attempt to establish the identity of any user involved in the receipt, possession, distribution, and transportation of child pornography, and to establish methods (such as software used) and dates of this activity.

h.   Metadata/Alternative Data Streams: Your affiant is aware that many file types, operating systems, and file systems have mechanisms for storing information which is not immediately visible to the end user without some effort.  Metadata, for example, is data

18

contained in a file which is not usually associated with the content of a file, but is often associated with the properties of the application or device which created that file.  For example, a digital camera photograph often has hidden data which contains information identifying the camera which manufactured it, and the date the image was taken.  Some file systems for computers also permit the storage of alternate data streams, whereby a file such as a text file may hide an image file which would not be immediately visible to an end user without some action taken.  Your affiant is aware that both metadata and alternative data streams may contain information which may be relevant to child pornography offenses.  Metadata and alternative data streams are often identified and processed automatically by computer forensic utilities. Your affiant intends to review any such data which is flagged by any process above as being relevant to the receipt, possession, distribution, and transportation of child pornography.

   25. With rare exception, the above-listed search techniques will not be performed on original digital evidence.  Instead, your affiant is aware that the first priority of a digital evidence forensic examination is the preservation of all data seized.  As such, original digital media will be, wherever possible, copied, or "imaged," prior to the start of any search for evidence.  The copy will be authenticated digitally as described in the paragraph below.

   26. Your affiant is aware that a digital forensic image is the best possible copy that can be obtained for a piece of digital media.  Forensic imaging tools make an exact copy of every accessible piece of data on the original digital media.  In general, the data contained on the original media is run through a hashing algorithm as described above, and a hash value for the entire device is generated.  Upon completion of the imaging process, the same hash algorithm is run on the imaged copy to ensure the copy is an exact duplicate of the original. Upon the completion of the search processes described above, which are performed on the image of the hard drive, the hash algorithm is again run on the image copy to ensure no alterations of the data occurred during the examination process.

27.     As previously mentioned, in the event that a piece of digital media is found not to be (a) an instrumentality of the offense, (b) a fruit of the criminal activity, (c) contraband, or (d) evidence of the offenses specified herein, it will be returned as quickly as possible, not to exceed 180 days.

28.     Your affiant also requests judicial authorization to retain copies of all seized storage media after the review is complete.  Criminal Procedure Rule 41 specifically states "The officer may retain a copy of the electronically stored information that was seized or copied." Fed. R. Crim. P. 41 (f)(1)(B).

29.     That Judicial authorization is justified in this case in part because:

a.     Should the execution of the warrant uncover data that may later need to be introduced into evidence during a trial or other proceeding, the authenticity and the integrity of the evidence and the government's forensic methodology may be contested issues.  Retaining copies of seized storage media may be required to prove these facts and the investigator may retain a copy of seized or electronically stored information pursuant to Fed. R. Crim. P. 41(f)(1)(B):

b.     Returning the original storage medium to its owner will not allow for the preservation of that evidence.  Even routine use may forever change the data it contains, alter system access times, or eliminate data stored on it.

c.     Because the investigation is not yet complete, it is not possible to predict all possible defendants against whom evidence found on the storage medium might be used.  That evidence might be used against persons who have no possessory interest in the storage media, or against persons yet unknown.  Retention of a complete image assures that it will be available to all parties, including those known now and those later identified.  Forensic analysis may identify the user names and screen names of those distributing child pornography to the user of the target computer(s).

20

d.   The act of destroying or returning storage medium could create an opportunity for a defendant to claim, falsely, that the destroyed or returned storage medium contained evidence favorable to him.  Maintaining a copy of the storage medium would permit the government, through additional warrant if necessary, to investigate such a claim.

e.   Similarly, should a defendant suggest an explanation for the presence of evidence on storage medium or some defense, it may be necessary to investigate such an explanation or defense by, among other things, re-examining the storage medium with that explanation or defense in mind.  This may require an additional examination of the storage medium for evidence that is described in Attachment B but was not properly identified and segregated previously.

30.     Your affiant has not attempted to acquire the sought after material through any other investigative or judicial process.

## IX.     REVIEW PROTOCOL

Government personnel will utilize the following computer review protocol:

31.     How computers were used, the purpose of their use, and who used them is a conclusion, based on a review of all available facts and the application of knowledge about how a computer behaves.  Therefore, such contextual evidence is often necessary to understand the evidence described in Attachment B, and is included within the scope of this warrant and will seized.

32.     Although it is not possible to accurately predict the exact composition of the review team, given the very limited computer forensic examination resources available at present, it is possible that the team may include one or more agents, computer specialists, analysts, and/or attorneys including members of the investigative team.  The team will not necessarily consist only of persons with those job descriptions, and by referencing those job

21

descriptions, this affiant does not intend to represent anything about the manner in which the team will conduct its review.  It is also possible that the review "team" will consist of a single person.

33.     Based on my knowledge, training, and experience in child exploitation and child pornography investigations and other investigation, and the experience and training of other law enforcement officers with whom I have had discussions, I know that when searching and seizing evidence from devices, agents commonly download or copy information from the devices and their components, or seize most or all device items to be processed later by a qualified computer expert in a laboratory or other controlled environment.  The latter approach is more typical for the following two reasons:

a.     The large storage capacity of modern digital storage devices assists in the concealment of criminal evidence, especially when the user camouflages digital files in the way they are named or stored.  Sorting criminal evidence from innocuous data may thus take days or weeks, depending upon the volume of data stored, and is generally difficult to accomplish on-site.  Also, some information on the device may only make sense in the context of other information that must be analyzed with it.  For example, an apparently meaningless series of letters and numbers may only be recognized as a password when described as such by another document, such as an email.

b.     Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment.  The vast array of hardware and software available requires even computer experts to specialize in particular systems and applications, so it is difficult to know before a search which expert should analyze the system

and its data.  The search of a device's system is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files.  Because electronic evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

34.     In case any data on the device is encrypted, password-protected, or booby-trapped, a forensic analyst would require any documentation or notes describing password-protection or encryption software used on the device, or listing passwords and usernames.

## X.  PROBABLE CAUSE

35.     On January 23, 2022, Snapchat Inc. submitted a report to the National Center for missing and Exploited Children (NCMEC) regarding an incident of child sexual abuse material (CSAM) being possessed or transmitted using their service.  The report was received by NCMEC staff on January 23, 2022 and is believed to have occurred in Folsom, California (CA). The report was subsequently assigned to the Sacramento Valley Hi-Tech Crimes Task Force under CyberTip number 116390270 on March 1, 2022.  The incident was ultimately assigned to Folsom Police Department/FBI Task Force Officer (TFO) Patrick Thibeault on March 8, 2022. TFO Thibeault viewed the CyberTip and noted that Snapchat Inc. provided the following information:

- Name:

- Phone: +19169343093

- Email: fatgou65@gmail.com

23

- Screen Name: william_sodafiz

- Date of Birth: 05-21-2000

- IP Address: 174.50.181.74 at 01/04/2022 at 02:25 UTC

The CyberTip also included a file (File Hash: 7407b2f4a72f419543601735ac383135) which was provided by Snapchat. A Snapchat representative physically viewed the file and believed the file contained child sexual abuse material; hence the reason for the NCMEC report. The following is information related to the provided file:

- File Name: william_sodafiz-None-9210661a-9656-51ad-8a57-3f2419da354e~38-e073738a6e.mp4

- File Hash: 7407b2f4a72f419543601735ac383135

TFO Thibeault viewed the file and the following is a brief summary of what he observed: The file is a video, approximately one minute and twenty-eight seconds long, which is recorded in a "selfie" manner.  At the beginning of the video a prepubescent female, estimated to be younger than thirteen years old, is nude and her breasts are exposed.  As the video continues the focal point changes to the female's exposed vagina and she begins to masturbate by touching her vagina and penetrating her vagina with a finger(s).  The video ends abruptly during this sexual act.

36.     TFO Thibeault conducted a search of the email address fatgou65@gmail.com using a law enforcement database.  TFO Thibeault has used that website on multiple previous investigations and have found the information to be true and accurate.  He found the email address fatgou65@gmail.com was associated to a "William Fitzgerald."  TFO Thibeault conducted a DMV record check using the name "William Fitzgerald" and the date of birth May

24

21, 2000 provided in the cyber tip.  Within the DMV records, TFO Thibeault located a driver's license for "William James Fitzgerald" with the same date of birth.  Fitzgerald listed 240 Natoma Station Dr. Apt. 7, Folsom, CA as his city of residence on the DMV license information.

37.     TFO Thibeault conducted a record check of the phone number 9169343093 using a law enforcement database.  TFO Thibeault has used that website on multiple previous investigations and have found the information to be true and accurate.  TFO Thibeault found the phone number 9169343093 was associated to AT&T Mobility and the associated name was "Celest Salvador." TFO Thibeault recalled the name as the registered owner of a vehicle in a 2018 vehicle burglary report on FITZGERALD's law enforcement database profile.  The registered owner of that vehicle was "Jonathan Salvador."  While reviewing Jonathan Salvador's law enforcement database profile, TFO Thibeault found "Celest Salvador" was listed as a potential first degree relative.

38.     On March 22, 2022, TFO Thibeault authored a search warrant to the following entities:

- AT&T for data associated to the phone number 9169343093.

- Snap Inc. for data associated to the username william_sodafiz.

- Google LLC for data associated to the email address fatgou65@gmail.com.

- Comcast Cable Communications for data associated to the IP address 174.50.181.74

That search warrant was authorized by the Honorable Jill Talley, Judge of the Superior Court of California, Sacramento County.  TFO Thibeault electronically served that search warrant that day.

39.     On March 25, 2022, TFO Thibeault received a download link from Google LLC. He downloaded two files, a Compressed (Zipped file) and a PDF certificate of authenticity.  He viewed the files within the compressed file and observed the following:

- A PDF certification of Authenticity.

- A Compressed (Zipped file) which detailed the following:

  o   Subscriber Information

    - Name: Godly Saitama

    - Birthdate: May 21, 2000

    - Last Logins: 2022-03-07 21:22:08 Z

Although the name provided to Google LLC was not William Fitzgerald, TFO Thibeault knew based on his training and experience, that users do not always provide their real name.  It is worth noting that the birth date provided to Google LLC was William Fitzgerald's birthday.

40.     On March 29, 2022, TFO Thibeault received a download link from Comcast Cable.  He downloaded one Compressed (Zipped file).  He viewed the file and observed the following:

- A PDF certification of records was provided.

- A word document for subscriber information associated to IP Address: 174.50.181.74 assigned on 01-04-2022 02:25 UTC which detailed the following:

- Subscriber Name: Jonathan Salvador

- SSN: 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

- Service Address: 240 Natoma Station Dr Apt 7 Folsom, Ca 956307973

- Billing Address: 240 Natoma Station Dr Apt 7 Folsom, Ca 956307973

26

- Telephone #: 916-293-2571, 916-770-0337

- Type of Service: Internet

- Account Number: 8155600410238649

- Start of Service: Unknown

- Account Status: Active

- IP Assignment: Dynamically Assigned

- E-mail User Ids: jsalvador7, celeste.salvador1 (end in @comcast.net)

41.     On April 6 and April 8, 2022, TFO Thibeault observed a 2009 Honda Civic (Ca-6JKP680) parked outside 240 Natoma Station Drive near the building which Apartment 7 is located.  This was the same vehicle identified in the previous vehicle burglary report mentioned above.  The registration was valid through July 2022.  The registered owner was Jonathan Salvador.

42.     On April 14, 2022, TFO Thibeault received a download link from Snapchat Inc. He viewed the contents of the Snapchat file download and noted the following:

**User Accounts**

- Creation Time: 12/15/2014

- Other Entries: william_sodafiz, fatgou65@gmail.com, +19169343093

**Chats**

- A chat conversation between william_sodafiz and user toboyobz.

    o   On January 22, 2022, the two users discuss sharing pictures and toboyobz asks for the youngest picture william_sodafiz has.

27

o william_sodafiz shares six images of a blonde female outdoors.  The female is in various stages of nudity including exposed breasts and vagina. TFO Thibeault believed the female to be between the ages of twelve and sixteen years old.

o Toboyobz shares five images of what appear to be underage females in various stages of nudity.  The ages cannot be estimated.

o william_sodafiz shares the video which generated the Cyber Tip which TFO Thibeault previously described:

- The file is a video, approximately one minute and twenty-eight seconds long which is recorded in a "selfie" manner.  At the beginning of the video a prepubescent female, estimated to be younger than thirteen years old, is nude and her breasts are exposed.  As the video continues the focal point changes to the female's exposed vagina and she begins to masturbate by touching her vagina and penetrating her vagina with a finger(s).  The video ends abruptly during this sexual act.

o william_sodafiz and toboyobz share multiple images and videos of what appear to be underage females in various stages of nudity.  The ages cannot be estimated.

- On January22, 2022, william_sodafiz is a part of a group message with twenty-two participants, including toboyobz.

o The chat thread contains many shared files but the contents cannot be seen.  One user, bgillam136, wrote the following:

- "Hello I'm selling a Dropbox if anyones interested? Ranges from (young/solo girls/fucking/public/milf/tits/pussy/ass/close ups and much more) 1233 pictures 250 videos Selling cheap so hmu if interested?"

- On January 24, 2022, william_sodafiz is in a chat with user jsmittyballing.

  o william_sodafiz and jsmittyballing discuss what seems to be images or pictures based on the context. william_sodafiz wrote: "korea has a lot of under age accounts." william_sodafiz then sends screenshot images of various Instagram account usernames.

  o Jsmittyballing asks if william_sodafiz has any like the last time.

  o william_sodafiz sends multiple files of what appears to be underage females in various stages of nudity. The ages cannot be estimated.

- A chat conversation between william_sodafiz and Minor Victim 1 (MV1). In these messages, Fitzgerald requests MV1 to send numerous CSAM photographs and videos, and MV1 sends these photographs and videos in response. In several instances, FITZGERALD sends MV1 Amazon gift cards in exchange for the CSAM.

- A chat conversation between william_sodafiz and Minor Victim 2 (MV2). In these messages, Fitzgerald requests MV2 to send numerous CSAM photographs and videos, and MV2 sends these photographs and videos in response.

**Videos**

- william_sodafiz saved a video containing CSAM. The file is a nine second colored video which starts with two naked females in a restroom. One female is on her back, and the second female is on her hands and knees, preforming oral sex on the first female. The

first female's face can be seen, and TFO Thibeault estimated her age to be between ten and fifteen years old.

**Images**

- william_sodafiz has many images of what appears to be underage females in various stages of nudity, including thumbnails of videos previously described.

- TFO Thibeault located dozens of "selfie" style images of a male who he recognized as William Fitzgerald based on the California DMV photograph.

**Device Locations**

- TFO Thibeault located approximately 5,129 device location records in which the GPS coordinates are at the location of 240 Natoma Station Drive Apt. 7, Folsom, CA 95630. The most recently location activity was March 9, 2022 and dated back as far as December 5, 2021.

43.     On May 11, 2022, the Sacramento Valley Hi-Tech Crimes Task Force, with help from FBI and HSI, conducted a search warrant for the person, vehicles, and residence of FITZGERALD.  During a subsequent post-*Miranda* interview, FITZGERALD told TFO Thibeault that he distributed CSAM and spoke with minors to entice and exploit them to produce CSAM photos and videos for him. FITZGERALD told TFO Thibeault that he had a sexual preference for teenage girls, aged approximately 14 to 15 years old. TFO Thibeault's forensic examinations of the evidentiary devices yielded images and videos consistent with what FITZGERALD told TFO Thibeault in the interview during the search warrant, as well as media from the Snapchat warrant return.

44.     On August 18, 2022, FITZGERALD submitted an online tip to the FBI National

Threat Operations Center via tips.fbi.gov, regarding being sextorted online.  A Snapchat user FITZGERALD was interacting with was threatening to send out FITZGERALD's nude photos unless he paid the other user.

45.     On August 23, 2022, MV1 was interviewed by an FBI Child/Adolescent Forensic Interviewer (CAFI) in Apple Valley, Minnesota.  MV1 confirmed the interactions with FITZGERALD, including making photos and videos for him in exchange for gift cards.

46.     On August 29, 2022, MV2 was interviewed by an FBI CAFI in San Francisco, CA. MV2 confirmed the interactions with FITZGERALD, including making photos and videos for him.

47.     FITZGERALD has sent photos of his penis to at least one minor and asked at least one minor to send nude photographs to FITZGERALD.

48.     On January 12, 2023, a federal grand jury indicted FITZGERALD on two counts of 18 U.S.C. § 2251(a) and one count of 18 U.S.C. §  2252(a)(2) (Case No. 2:23-cr-0008-TLN). On January 13, 2023, FITZGERALD was arrested on a federal warrant.  Officers seized an iPhone 12 with S/N DX3HLGE70DXP from FITZGERALD.

## XI.     CHARACTERISTICS COMMON TO INDIVIDUALS WHO RECEIVE, POSSESS, AND/OR PRODUCE CHILD PORNOGRAPHY

49.     Based on my previous investigative experience related to child exploitation investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals who receive, possess, and/or access with intent to view child pornography:

a.     Such individuals may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual

activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity. These individuals may continue to collect child pornography and/or child erotica even after contact with law enforcement.

      b.     Such individuals may collect sexually explicit or suggestive materials in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

      c.     Such individuals almost always possess and maintain their hard copies of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Individuals who have a sexual interest in children or images of children typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

      d.     Likewise, such individuals often maintain their child pornography images in a digital or electronic format in a safe, secure, and private environment, such as a computer/digital device and surrounding area. These child pornography images are often maintained for several years and are kept close by, usually at the possessor's residence, inside the possessor's vehicle, or, at times, on their person, or in cloud-based online storage, to enable the individual to view the child pornography images, which are valued highly. Some of these individuals also have been

found to download, view, and then delete child pornography on their computers or digital devices on a cyclical and repetitive basis.

e.     Importantly, evidence of such activity, including deleted child pornography, often can be located on these individuals' computers and digital devices through the use of forensic tools.  Indeed, the very nature of electronic storage means that evidence of the crime is often still discoverable for extended periods of time even after the individual "deleted" it.[1]

f.     Such individuals also may correspond with and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/possessors, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses (including e-mail addresses), usernames/user handles, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

g.     Such individuals prefer not to be without their child pornography for any prolonged time period.  This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.  Thus, even if FITZGERALD uses a portable device (such as a mobile phone) to access the internet and child pornography, it is more likely than not that evidence of this access will be found on a new phone and other devices, as set forth in Attachment A.

---

[1] *See United States v. Carroll*, 750 F.3d 700, 706 (7th Cir. 2014) (concluding that 5-year delay was not too long because "staleness inquiry must be grounded in an understanding of both the behavior of child pornography collectors and of modern technology"); *see also United States v. Seiver*, 692 F.3d 774 (7th Cir. 2012) (Posner, J.) (collecting cases, e.g., *United States v. Allen*, 625 F.3d 830, 843 (5th Cir. 2010); *United States v. Richardson*, 607 F.3d 357, 370–71 (4th Cir. 2010); *United States v. Lewis*, 605 F.3d 395, 402 (6th Cir. 2010)).

## XII.   CONCLUSION

50.     Based on the following, I believe that FITZGERALD displays characteristics common to individuals who produce, receive, or possess child pornography.  There is probable cause to believe that FITZGERALD has engaged in, and continues to engage in, the online enticement of suspected minors and coercion to produce sexually explicit images and videos. FITZGERALD has sent photos of his penis to at least one minor and asked at least one minor to send nude photographs to FITZGERALD.

51.     Based on the aforementioned factual information, I believe there is probable cause that **WILLIAM JAMES FITZGERALD** is involved in sexual exploitation of minors, 18 U.S.C. § 2251(a) and distribution of child pornography, 18 U.S.C. § 2252(a)(2), and that evidence, contraband, fruits, and instrumentalities of this crime can be found on the device(s) described in Attachment A.

/s/
_____
Special Agent Christopher Gecewicz
Federal Bureau of Investigation

Sworn and subscribed before me telephonically this ___17___ day of January 2023.

_Kendall J. Newman_
HON. KENDALL J. NEWMAN
U.S. MAGISTRATE JUDGE

_/s/ Alstyn Bennett_
Approved as to form by AUSA ALSTYN BENNETT

34

## ATTACHMENT A

### DESCRIPTION OF THE DEVICE TO BE SEARCHED

The phone of WILLIAM JAMES FITZGERALD is described as follows:

iPhone 12 with black case, S/N: DX3HLGE70DXP.  The device is currently located at the Folsom Police Department evidence locker in Folsom, CA.

## ATTACHMENT B

## ITEMS TO BE SEIZED

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of Title 18, United States Code, Sections 2251 and 2252:

1. Computers or storage media used as a means to commit the violations described above.

2. For any computer, digital device, or storage medium whose seizure is otherwise authorized by this warrant, and any computer, digital device, or storage medium that contains or in which are stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

   a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

   b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

   c. evidence of the lack of such malicious software;

d.  evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to the crime(s) under investigation and to the computer user;

e.  evidence indicating the computer user's knowledge and/or intent as it relates to the crime(s) under investigation;

f.  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g.  evidence of programs (and associated data) that are designed to eliminate data from the COMPUTER;

h.  evidence of the times the COMPUTER was used;

i.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j.  documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k.  records of or information about Internet Protocol addresses used by the COMPUTER;

l.  records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

m.  contextual information necessary to understand the evidence described in this attachment.

37

3. Routers, modems, and network equipment used to connect computers to the Internet.

4. Child pornography and child erotica.

5. Credit card statements, user names and passwords, and/or communications with online retailers relating to the sale of items that may be used to conceal purchases of child pornography and/or child erotica.

6. Records, information, and items relating to violations of the statutes described above including:

   a. Records, information and items relating to hotel receipts and or room reservations.

   b. Records, information, and items relating to the ownership or use of computer equipment found in the above residence, including sales receipts, bills for Internet access, and handwritten notes;

   c. Records and information relating to the identity or location of the persons suspected of violating the statutes described above;

   d. Records and information relating to the sexual exploitation of children, including correspondence and communications between users of the website described in the warrant application;

   e. Records and information relating to the purchase of lodging, contraception, sex toys, or other items to facilitate sexual activity with a minor;

   f. Records and information showing access to and/or use of the websites described in the warrant application; and

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high-speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded, including external and internal hard drives, flash drives, thumb drives, micro SD cards, macro SD cards, DVDs, gaming systems, SIM cards, cellular phones capable of storage, floppy disks, compact discs, magnetic tapes, memory cards, memory chips, and other magnetic or optical media.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | | | |
|---|---|---|---|
| In the Matter of the Search of | ) | | |
| | ) | | |
| | ) | Case No. | 2:23-sw-0033 KJN |
| iPhone 12 with black case, S/N: DX3HLGE70DXP | ) | | |
| | ) | | |
| | ) | | |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____ *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before ____01/31/23____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: any authorized U.S. Magistrate Judge in the Eastern District of California.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   ____01/17/23 at 9:45 a.m.____

City and state:   ____Sacramento, California____

*Judge's signature*

Kendall J. Newman, U.S. Magistrate Judge
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.


_____          _____
           Signature of Judge                                     Date

## ATTACHMENT A

### DESCRIPTION OF THE DEVICE TO BE SEARCHED

The phone of WILLIAM JAMES FITZGERALD is described as follows:

iPhone 12 with black case, S/N: DX3HLGE70DXP.  The device is currently located at the Folsom Police Department evidence locker in Folsom, CA.

## ATTACHMENT B

## ITEMS TO BE SEIZED

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of Title 18, United States Code, Sections 2251 and 2252:

1. Computers or storage media used as a means to commit the violations described above.

2. For any computer, digital device, or storage medium whose seizure is otherwise authorized by this warrant, and any computer, digital device, or storage medium that contains or in which are stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

   a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

   b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

   c. evidence of the lack of such malicious software;

36

d.  evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to the crime(s) under investigation and to the computer user;

e.  evidence indicating the computer user's knowledge and/or intent as it relates to the crime(s) under investigation;

f.  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g.  evidence of programs (and associated data) that are designed to eliminate data from the COMPUTER;

h.  evidence of the times the COMPUTER was used;

i.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j.  documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k.  records of or information about Internet Protocol addresses used by the COMPUTER;

l.  records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

m.  contextual information necessary to understand the evidence described in this attachment.

37

3.  Routers, modems, and network equipment used to connect computers to the Internet.

4.  Child pornography and child erotica.

5.  Credit card statements, user names and passwords, and/or communications with online retailers relating to the sale of items that may be used to conceal purchases of child pornography and/or child erotica.

6.  Records, information, and items relating to violations of the statutes described above including:

    a.  Records, information and items relating to hotel receipts and or room reservations.

    b.  Records, information, and items relating to the ownership or use of computer equipment found in the above residence, including sales receipts, bills for Internet access, and handwritten notes;

    c.  Records and information relating to the identity or location of the persons suspected of violating the statutes described above;

    d.  Records and information relating to the sexual exploitation of children, including correspondence and communications between users of the website described in the warrant application;

    e.  Records and information relating to the purchase of lodging, contraception, sex toys, or other items to facilitate sexual activity with a minor;

    f.  Records and information showing access to and/or use of the websites described in the warrant application; and

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high-speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded, including external and internal hard drives, flash drives, thumb drives, micro SD cards, macro SD cards, DVDs, gaming systems, SIM cards, cellular phones capable of storage, floppy disks, compact discs, magnetic tapes, memory cards, memory chips, and other magnetic or optical media.